# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

| | | |
|---|---|---|
| **KOENIGS, L.L.C.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:17-cv-01109-STA-egb** |
| | ) | |
| **CITY OF SAVANNAH, TENNESSEE,** | ) | |
| **GARRY WELCH, individually, and in** | ) | |
| **his official capacity, RICKY** | ) | |
| **BRATTON, individually, CURTIS** | ) | |
| **MANSFIELD, JR., individually, and** | ) | |
| **JOHN ALBERTSON, III, individually,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART STATE DEFENDANTS' SECOND MOTION TO DISMISS; DENYING STATE DEFENDANTS' FIRST MOTION TO DISMISS AS MOOT; AND DENYING CITY DEFENDANTS' MOTION TO DISMISS AS MOOT

All are entitled to the due process of law. But what protections, precisely, are owed? That is ultimately the question presented to the Court today. And while it is also a question that has been presented to many courts before, *this* Court is unable to resolve the question as applied to *this* plaintiff so early in the proceedings. Presently before the Court are the Motions to Dismiss (ECFs No. 17, 18, & 27) of Defendants Garry Welch ("Welch"), the City of Savannah ("the City") (collectively "City Defendants"), Ricky Bratton ("Bratton"), Curtis Mansfield, Jr. ("Mansfield"), and John Albertson III ("Albertson") (collectively "State Defendants"). Plaintiff Koenigs, L.L.C., filed suit after its removal from the State of Tennessee's and the City's towing lists for post-accident cleanup, bringing claims under a number of constitutional provisions including the First, Fifth, and Fourteenth Amendments. All Defendants have moved to dismiss

these claims, arguing that Plaintiff has relied on mere conclusions and restatements of the elements and therefore failed to allege sufficient facts to support any of its claims. For reasons set forth below, City Defendants' Motion is **DENIED** as moot, State Defendants' first Motion is **DENIED** as moot, and State Defendants' second Motion is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's "arbitrary and capricious" claims, substantive due process claims, and procedural due process claims survive, while all of Plaintiff's remaining claims against State Defendants are **DISMISSED**.

## I.     BACKGROUND

### A.     Procedural Posture

Plaintiff filed its initial Complaint (ECF No. 1) on June 9, 2017. City Defendants filed their Motion to Dismiss (ECF No. 17) on July 29, 2017. And State Defendants filed their first Motion to Dismiss (ECF No. 18) on August 22, 2017. But Plaintiff then moved the Court for leave to amend its Complaint (ECF No. 21). The Court denied Plaintiff's Motion, however, and noted in its August 29, 2017 Order (ECF No. 23) that, because Plaintiff had just been served with a Rule 12(b) motion and had not amended its Complaint previously, Plaintiff was therefore permitted to amend its pleading as a matter of right under Federal Rule of Civil Procedure 15(a)(1). Plaintiff accordingly filed its Amended Complaint (ECF No. 24) that same day. On August 31, 2017, City Defendants filed a document styled as a Reply to Plaintiff's Amended Complaint (ECF No. 25), requesting that the Court construe the Amended Complaint as merely a response to Defendants' Motions because its amendments were in fact responsive to Defendants' initial Motions. Plaintiff then filed a Response (ECF No. 26) that addressed the points made in City Defendants' Reply. On September 12, 2017, State Defendants filed a Second Motion to

Dismiss (ECF No. 27).  And Plaintiff filed a Response (ECF No. 29) thereto on September 20, 2017.

### B.      Allegations of the Amended Complaint

The following allegations set forth in Plaintiff's Amended Complaint are presumed to be true unless otherwise specified.  *See* Am. Compl., Aug. 29, 2017, ECF No. 24; *infra* Part II. Plaintiff is a limited liability company organized under the laws of the State of Tennessee and a wrecker service.[1]  The City is a municipality duly organized and existing under the laws of the State of Tennessee.  Welch was, for the period relevant to this matter, the City Manager of the City.  Bratton is a lieutenant employed by the Tennessee Department of Safety and Homeland Security (the "Department").  Mansfield is a captain employed by the Department.  Albertson is a lieutenant colonel employed by the Department.

On behalf of the State, the Department maintains a rotating schedule towing list for the purpose of utilizing private towing companies' services for wrecks occurring within their jurisdiction.  A wrecker service's participation on the State's rotation list is governed by the rules and regulations adopted by the State and compiled in a manual issued to all interested wrecker services.  Annual inspections are conducted to ensure compliance.  Indeed, if a wrecker service meets or complies with the State's rules and regulations, according to Plaintiff, that wrecker service must be included on the state's rotation list.  Further, the State's towing manual provides for specific procedures that must be followed before a wrecker service can be removed from the rotation.  The manual provides that wrecker services have the right to a hearing and appeal

---

[1] The Court uses "wrecker service" and "towing company" interchangeably in this Order. Any difference between the two terms is immaterial to the Motions before the Court.

regarding any decision to remove or suspend them from the towing list. Plaintiff asserts that any suspension, removal, or other interruption of a wrecker service's inclusion on the list causes that wrecker service to sustain significant financial losses.

The City maintains a separate rotating towing list for the purpose of utilizing private towing companies' services for wrecks occurring within its jurisdiction. The City maintains "Recovery, Towing[,] and Storage Standards," which dictate the requirements for a towing company to be included on its list. The City's Standards require wrecker services to expend substantial funds to ensure compliance in exchange for the expectation that said services will be called upon on a regular basis. Among other requirements, the City's Standards require that a wrecker service meet the State's requirements in order to remain on the City's list.

As stated above, Plaintiff is engaged in the business of towing and recovery services. Plaintiff was listed on the State's list for the district surrounding Jackson, Tennessee, and on the City's list for several years by the summer of 2016. Plaintiff maintains that it met the standards required by the State and the City. On June 9, 2016, a tractor trailer vehicle owned by TNJ Trucking Company ("TNJ") crashed on Pyburn Road in Hardin County, Tennessee. Plaintiff arrived at the scene at the request of State officials due to its inclusion on the rotation list for the Jackson district. Plaintiff performed towing and recovery services. Plaintiff continued to clean up the scene of the accident for a two-day period and sustained significant damage to its equipment. Not only had the tractor trailer been disabled, but the trailer's cargo had spread across the accident scene and posed a danger to the health, safety, and welfare of the individuals residing or working the area. Subsequently, Plaintiff sent TNJ an invoice for $44,553.75—an amount that Plaintiff states is reasonable and customary for the work performed. TNJ, through its insurer, paid the invoice as well as a small, additional amount for storage fees on June 22,

2016. TNJ or its insurer, however, then complained that they had been overcharged. TNJ asked Bratton to look into the matter, despite Bratton's lack of knowledge as to the services performed by Plaintiff.

In or around July 2016, Bratton communicated false information about Plaintiff to Welch. Then, through an August 26, 2016 letter, City Defendants removed Plaintiff from the City's towing list. City Defendants did not contact Plaintiff regarding its removal from the towing list or even the circumstances surrounding the services performed for TNJ. According to Plaintiff, Bratton did prepare an investigative report that was not only incomplete but also contained false information. Plaintiff maintains that Bratton knew that his report was incomplete and contained false information at the time of his investigation. Mansfield issued a determination on January 23, 2017, to remove Plaintiff from the State's towing list based solely on the opinion of Bratton. Plaintiff was then notified of a pre-removal hearing held on February 7, 2017. But at the hearing, Plaintiff was not allowed to discover any information concerning the underlying facts serving as the basis for its exclusion from the rotation list or any other information. No one representing TNJ, its insurer, or the owners of the cargo it was transporting at the time of the accident, was present for the hearing. Mansfield issued his final determination on February 21, 2017, which permanently removed Plaintiff from the State's list. Plaintiff maintains that Mansfield, in making his final determination, (1) ignored Plaintiff's position along with any documents Plaintiff was allowed to present; (2) denied Plaintiff's request to discover the underlying facts and circumstances that surrounded the complaint of overcharging; and (3) accepted the faulty report of Bratton. Finally, on April 4, 2017, Albertson upheld the final determination without any additional inquiry.

## II.     STANDARD OF LAW

A defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the Complaint as true, construing those allegations in the light most favorable to the non-moving party.  *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992); *see also Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ("[I]t is well established that, in passing on a motion to dismiss, . . . the allegations of the complaint should be construed favorably to the pleader.").  Legal conclusions and unwarranted factual inferences, however, need not be accepted as true.  *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) (citing *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976); *Davis H. Elliot Co. v. Caribbean Utilities Co.*, 513 F.2d 1176, 1182 (6th Cir. 1975); *Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir. 1971)). "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003) (citing *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003)).  Under Federal Rule of Civil Procedure 8, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). Although this standard does not require "'detailed factual allegations,' it does require more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is

plausible on its face." *Twombly*, 550 U.S. at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

## III.    ANALYSIS

### A.    Effect of the Amended Complaint

City Defendants assert that the Court should treat the Amended Complaint as a response to their Motion to Dismiss. Garry Welch's and the City's Reply to Koenigs's Resp. Opp'g the Mot. to Dismiss, at 1–2, Aug. 31, 2017, ECF No. 25 [hereinafter "City Defs.' Reply"]). Generally, the filing of an amended complaint supersedes any previous complaint. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306–07 (6th Cir. 2000) (citing *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000); *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999)). City Defendants argue, however, that the Amended Complaint should be considered a Response to their Motion because it is responsive to the deficiencies highlighted in their Motion. City Defs.' Reply, at 1 (citing *Little v. Corrections Corp. of Am., Inc.*, 2001 WL 1910056, at *1 (W.D. Tenn. Oct. 31, 2001) (Vescovo, M.J.)). City Defendants' point is not completely illogical, and another member of this Court has reasoned similarly. *See ECIMOS, LLC v. Carrier Corp.*, 2016 U.S. Dist. LEXIS 59191, at *4 n.1 (W.D. Tenn. May 4, 2016) ("Plaintiff's Amended Complaint . . . does not modify any legal theory or factual basis for Plaintiff's claims. . . . [and] had no effect on the arguments raised in the Motion to Dismiss. Accordingly, the Court finds that the Motion to Dismiss is not moot . . . ."). But the Court intends to stick to normal procedure as supported by the Sixth Circuit's case law. When Plaintiff filed its Amended

Complaint, its original Complaint was rendered a nullity. The Amended Complaint has controlled this case from the moment of the Amended Complaint's filing. As a result, all motions that seek dismissal of the original Complaint are now moot. Accordingly, both City Defendants' Motion to Dismiss and State Defendants' first Motion to Dismiss are **DENIED** as moot. If City Defendants wish to file a new Motion to Dismiss, they have fourteen (14) days from the entry of this Order to do so.

### B. Plaintiff's Causes of Action Against State Defendants

In its Amended Complaint, Plaintiff brings the following claims against State Defendants: (1) deprivation of its property in violation of the Fifth and Fourteenth Amendments; (2) violation of its due process rights as guaranteed by the Fifth and Fourteenth Amendments; (3) violation of its right to equal protection under the law as afforded by the Fifth and Fourteenth Amendments; (4) arbitrary and capricious treatment in violation of the United States Constitution; (5) violation of rights as guaranteed by the First and Fourteenth Amendments; (6) infringement of the right to legitimately conduct a business under the United States Constitution; and (7) infringement and denial of the right to contract in violation of the United States Constitution. Am. Compl., ¶ 31, ECF No. 24. State Defendants acknowledge in their Memorandum that they are only moving for *partial* dismissal of the Amended Complaint. Mem. of Law in Supp. of Defs.' Mot. to Dismiss, at 2, Sept. 12, 2017, ECF No. 28 [hereinafter "State Defs.' Supp'g Mem."]. As such, they argue for the dismissal of the following claims by Plaintiff: (1) First Amendment claims, (2) Fifth Amendment claims, (3) Fourteenth Amendment equal protection claims, (4) Fourteenth Amendment procedural due process claims, and (5) Contract Clause claims. By its own argument, Plaintiff folds its claim involving the

infringement of its right to legitimately conduct a business under its Fourteenth Amendment Due Process Clause claim. Pl.'s Resp. to Mot. to Dismiss Filed on Behalf of Defs. Bratton, Mansfield, and Albertson, at 11–12, Sept. 20, 2017, ECF No. 29 [hereinafter "Pl.'s Resp. to State Defs.' Mot."]. But this still leaves Plaintiff's substantive due process claim under the Fourteenth Amendment and its "arbitrary and capricious" claim undisturbed by the instant Motion.

### C. First Amendment Claims

Plaintiff has withdrawn its First Amendment claims. Pl.'s Resp. to State Defs.' Mot., at 7. Therefore, Plaintiff's First Amendment claims are **DISMISSED**.

### D. Fifth Amendment Claims

#### 1. Due Process Clause

State Defendants correctly point out in their Memorandum that the Due Process Clause of the Fifth Amendment is only applicable to the federal government. *Parker v. Burt*, 595 F. App'x 595, 600 n.3 (6th Cir. 2015) (citing *Scott v. Clay Cty.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000)); *cf. United States v. Green*, 654 F.3d 637, 650–51 (6th Cir. 2011) (citing *Bolling v. Sharpe*, 347 U.S. 497, 498–99 (1954)); *Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 827 (6th Cir. 1981) (Keith, J., dissenting). Plaintiff responds, however, by invoking the Takings Clause rather than the Due Process Clause. Pl.'s Resp. to State Defs.' Mot., at 7. And indeed, Plaintiff's Amended Complaint lists its causes of action as consisting of not only the Due Process Clause under the Fifth Amendment but also the deprivation of property rights in violation of the Fifth Amendment. Am. Compl., ¶¶ 31(a)–(b), 34(a)–(b), ECF No. 24. Thus, in so far as Plaintiff brought claims against State Defendants under the Fifth Amendment's Due Process Clause as

stated in paragraph 31(b) of the Amended Complaint, such claims are **DISMISSED**.  The Court will, however, further examine Plaintiff's allegations as to the Takings Clause.

### 2. Takings Clause

Plaintiff maintains that its allegations—that (1) it had a property interest in remaining on the City tow list, (2) the City through Welch deprived Plaintiff of that interest by removing Plaintiff from the two list without any investigation or other process that Plaintiff was due, and (3) the basis for its Amended Complaint was that Plaintiff received no compensation for the deprivation of its property interest—are sufficient to sustain a Takings Clause claim.  Pl.'s Resp. to State Defs.' Mot., at 7.  Plaintiff makes no argument, however, that the actions of State Defendants constituted a taking.  Therefore, the Court finds that Plaintiff has failed to state a claim under the Takings Clause against State Defendants.  Such claims are accordingly **DISMISSED**.

### 3. Equal Protection

Plaintiff's equal protection claim, in so far as it relies on the Fifth Amendment, fails because the equal protection element of the Fifth Amendment is applicable only to the federal government.  *See United States v. Green*, 654 F.3d 637, 650–51 (6th Cir. 2011) (citing *Bolling v. Sharpe*, 347 U.S. 497, 498–99 (1954)); *supra* Section III.D.1.  Plaintiff makes no allegation that State Defendants are part of or otherwise acting on behalf of the federal government.  Therefore, Plaintiff's equal protection claim against State Defendants, as brought under the Fifth Amendment, is hereby **DISMISSED**.

### E. Equal Protection Clause

The Equal Protection Clause prohibits any "State [from] . . . deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "Fundamentally, the Clause protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights." *Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). In effect, it "prohibits discrimination by government [that] burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 461 (6th Cir. 2012) (quoting *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011)). Thus, "[t]he threshold element of an equal protection claim is disparate treatment . . . ." *Scarbrough*, 470 F.3d at 260. "The precise level of scrutiny that a court will provide a challenged provision," however, "depend[s] upon the interest affected or the classification involved." *Johnson v. Bredesen*, 624 F.3d 742, 755 (6th Cir. 2010) (quoting *Dunn v. Blumstein*, 405 U.S. 330, 335 (1972)) (Moore, J., dissenting). "[O]nce [a plaintiff establishes] disparate treatment . . . , the equal protection analysis to be applied is determined by the classification used by government decision-makers." *Scarbrough*, 470 F.3d at 260. "Those laws that burden a fundamental right or target a suspect class will be 'subject to strict scrutiny, and will be upheld only when they are narrowly tailored to a compelling governmental interest.'" *Johnson*, 624 F.3d at 755 (quoting *Does v. Munoz*, 507 F.3d 961, 964 (6th Cir. 2007)). But "a law [that] neither burdens a fundamental right nor targets a suspect class" must merely "bear[] a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996) (citing *Heller v. Doe*, 509 U.S. 312, 319–20 (1993)). "In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, the legislative facts on

which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." *Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992) (citations omitted).

State Defendants assert that Plaintiff cannot sustain a claim under the Equal Protection Clause. They argue that Plaintiff has failed to allege any facts supporting the notion that Plaintiff was targeted for disparate treatment because of its membership in a protected class. Plaintiff argues, however, that it has alleged facts sufficient to support its claim as a "class of one." *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one' . . . ."). In *Willowbrook*, the Supreme Court acknowledged once again that "the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Id.* (quoting *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1922)). As such, a "class of one" may be alleged when "the plaintiff alleges [(1)] that [it] has been intentionally treated differently from others similarly situated and [(2)] that there is no rational basis for the difference in treatment." *Id.* (citing *Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.*, 488 U.S. 336 (1989); *Sioux City Bridge Co.*, 260 U.S. 441). While the parties are in agreement that Plaintiff is pursuing its claims under a "class of one" theory, they of course disagree over whether Plaintiff's allegations are sufficient.

Plaintiff claims that State Defendants singled out Plaintiff for disparate treatment without a rational basis. Pl.'s Resp. to State Defs.' Mot., at 9. Plaintiff says its allegations that State

Defendants ignored relevant, accurate information when deciding to remove Plaintiff from the Department's towing list. *Id.* (citing Am. Compl., ¶¶ 25–26, ECF No. 24). Plaintiff further alleges that it was subjected "to worse treatment than other similarly situated wrecker services that were allowed to remain on the towing rotation list." Am. Compl., ¶ 24, ECF No. 24.

State Defendants first argue that Plaintiff's allegation that it was treated differently from similarly-situated towing or wrecker services is insufficient because "similarly situated" is a legal conclusion. *See* State Defs.' Supp'g Mem., at 5. State Defendants assert that there is no factual allegation from Plaintiff that supports the first requirement of a "class of one" claim—the defendants intentionally treated the plaintiff differently than others similarly situated. The Court agrees. Plaintiff has not made any allegation as to how other towing services are treated by State Defendants. Its bare assertion that it was treated differently because it is not on the list is insufficient.

Moreover, Plaintiff has not adequately supported his claim that the removal from the towing lists lacked a rational basis. Plaintiff has certainly alleged that State Defendants relied on false information in making their decisions, but that is not the standard for a rational basis under this claim. "A 'class of one' plaintiff may demonstrate that government action lacks a rational basis either by [negating] every conceivable basis which might support the government action, or by showing that the challenged action was motivated by animus or ill-will." *Trihealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005) (citing *Warren v. City of Athens*, 411 F.3d 697, 710–11 (6th Cir. 2005)). Thus, "Plaintiff . . . [has the] 'heavy burden of [negating] every conceivable basis' for the City's actions" or "prov[ing] that the challenged government actions were motivated by personal malice unrelated to [Defendants'] official duties." *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 Fed. Appx. 826, 837–38 (6th Cir. 2009) (citations

omitted). Here, Plaintiff has done neither, offering only the legal conclusion that the action lacked a rational basis without further factual support.

For these reasons, the Court finds that Plaintiff cannot establish that is a class of one. Therefore, Plaintiff's equal protection claims against State Defendants are **DISMISSED**.

### F. Due Process Clause of the Fourteenth Amendment

"No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause of the Fourteenth Amendment, has been held by the higher courts to embrace both a procedural and substantive component to due process. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 755–56 (2005); *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996). *But see Albright v. Oliver*, 510 U.S. 266, 275–76 (1994) (citing *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 470–71 (1993) (Scalia, J., concurring)) (Scalia, J., concurring) ("I reject the proposition that the Due Process Clause guarantees certain (unspecified) liberties, rather than merely guarantees certain procedures as a prerequisite to deprivation of liberty."). The Sixth Circuit has previously stated that the distinctions between the two components, though often difficult to identify, can clarify "the different standards applicable to each and to sharpen the focus of [the Court's] analysis." *Howard*, 82 F.3d at 1349. Writing for the appellate panel, Judge Ryan explained the procedural component as follows:

> A procedural due process limitation, unlike its substantive counterpart, does not require that the government refrain from making a substantive choice to infringe upon a person's life, liberty, or property interest. It simply requires that the government provide "due process" before making such a decision. The goal is to minimize the risk of substantive error, to assure fairness in the decision-making process, and to assure that the individual affected has a participatory role in the process. . . . The rationale for granting procedural protection to an interest that

does not rise to the level of a fundamental right lies at the very heart of our
constitutional democracy: *the prevention of arbitrary use of government power*.

*Id.* The substantive component, "on the other hand, serves the goal of preventing 'governmental

power from being "used for purposes of oppression,"' regardless of the fairness of the

procedures used." *Id.* (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).  Procedural due

process thus ensures the rule of law in "a government which is to be administered by men over

men," *The Federalist No. 51*, at 319 (James Madison) (Clinton Rossiter ed., 1961), by requiring

certain procedures before an individual may be deprived of life, liberty, or property.  Substantive

due process, however, recognizes that there are certain liberties that the government may not

intrude upon without a most exacting scrutiny, even when all required procedural protections

were given.  Here, State Defendants have only moved to dismiss claims brought by Plaintiff

under the procedural component.

"The touchstone of procedural due process is the fundamental requirement that an

individual be given the opportunity to be heard 'in a meaningful manner.'"  *Howard*, 82 F.3d at

1349 (quoting *Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 563 (6th Cir. 1983), *aff'd*,

470 U.S. 532 (1985)).  The opportunity to be heard in a meaningful manner is most often

expressed in terms of (1) notice and (2) a hearing.  *Mathews v. Eldridge*, 424 U.S. 319, 348

(1976) (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171–72 (1951)

(Frankfurter, J., concurring)) ("The essence of due process is the requirement that 'a person in

jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.'").

Thus, if Plaintiff is to be deprived of liberty or property by the State, it must be given a

meaningful hearing and notice of that hearing.  First, however, Plaintiff must allege that it was

deprived of a constitutionally-protected liberty or property interest.  *Deming v. Jackson-Madison*

*County Gen. Hosp. Dist.*, 553 F. Supp. 2d 914, 930 (W.D. Tenn. 2008) (citing *Marler v. State*

*Board of Optometry*, 102 F.3d 1453, 1456 (8th Cir. 1996)). Then, if Plaintiff has sufficiently alleged the deprivation of such an interest, it must also have alleged that it was not provided with adequate procedural protections for that interest. *Martinez v. City of Cleveland*, 700 F. App'x 521, 522 (6th Cir. 2017) (citing *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999)).

### 1.    Constitutionally Protected Interest

At the outset, the Court must determine whether Plaintiff is proceeding under the theory that it was deprived of a property interest or a liberty interest. The Amended Complaint references Plaintiff's "vested property rights," Am. Compl., ¶ 31(a), ECF No. 24. And in Plaintiff's Response to State Defendants, Plaintiff refers to a property interest rather than a liberty interest. Pl.'s Resp. to State Defs.' Mot., at 10. Thus, the Court finds that Plaintiff has brought its claims under the theory of deprivation of a property interest without due process.

Plaintiff has stated in a conclusory fashion that "its [p]lacement on the [S]tate and [C]ity lists . . . creates a protected property interest." Am. Compl. § 12, ECF No. 24. But this legal conclusion does rest on a few concrete allegations: (1) placement on the State list is governed rules and regulations adopted by the State and provided to each towing company; (2) inspections are regularly conducted to ensure compliance with said rules and regulations; (3) if the towing company is in compliance, then the company must remain on the State list; and (4) a towing company is entitled to a hearing and appeal regarding any decision to remove, temporarily or permanently, the company from the State list. *Id.* ¶¶ 9–10.

"Property interests, of course, are not created by the Constitution." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). They are instead protected by it.

> "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interest that a person has already acquired in specific benefits."

> The mere unilateral expectation of continuing to receive a benefit is not enough to create a protected property interest; instead a "legitimate claim of entitlement" must exist.

*Lucas v. Monroe County*, 203 F.3d 964, 978 (6th Cir. 2000) (quoting *Roth*, 408 U.S. at 576–77).

"Because the Constitution protects rather than creates property interests, the existence of a property interest is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.'" *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998) (quoting *Roth*, 408 U.S. at 577). The Sixth Circuit upheld the dismissal of the plaintiffs' procedural due process claim in *Lucas* for failing to establish a protected property interest when the plaintiffs could point to no "ordinance, contract[,] or other 'rule[] of mutually explicit understanding[]' that support[ed] their claim of entitlement . . . ." 203 F.3d at 978 (quoting *Perry v. Sindermann*, 408 U.S. 593, 601 (1972)). For example, the Supreme Court stated in the *Perry* that "[a] written contract with an explicit tenure provision clearly is evidence of a formal understanding that supports a teacher's claim of entitlement to continued employment unless sufficient 'cause' is shown." 408 U.S. at 601. In *Lucas*, however, the Sixth Circuit distinguished the case before it from *Gregg v. Lawson*, 732 F. Supp. 849 (E.D. Tenn. 1989), because "[i]n *Gregg*, the court held that the plaintiff had a 'legitimate claim of entitlement' *in remaining on the wrecker tow list*, on grounds that '*several references to and procedures for removal or suspension from the list* to compel compliance with the regulations reflect the mutual nature of the relationship established by inclusion on the list.'" *Lucas*, 203 F.3d at 978 (quoting *Gregg*, 732 F. Supp. at 853) (emphasis added). Plaintiff makes such allegations here, noting that the manual provided to each towing company contained the various requirements and detailed the removal procedures, which required a hearing and an appeal. Am. Compl., ¶¶ 8–10, ECF No. 24. Therefore, the Court finds that Plaintiff has sufficiently alleged the existence of a protected

property interest in remaining on the State's towing list and that Plaintiff has sufficiently alleged that it was deprived of such interest.

## 2.     Adequate Procedural Protections

The question is then whether the procedural protections of the Department, as alleged by Plaintiff, were inadequate.  State Defendants argue that the provided procedural protections were adequate because they resulted in a hearing with notice to Plaintiff thereof, as well as an appeal. And therefore, goes State Defendants' argument, Plaintiff's claim must fail.  Plaintiff, however, argues that neither the hearing nor the appeal was meaningful, and therefore, the protections provided by the State were inadequate.

Referring to Plaintiff's allegation, State Defendants note that the State's towing manual provided that a wrecker company has the right to a hearing and appeal when an adverse decision regarding its placement on the towing list has been rendered.  State Defs.' Supp'g Mem, at 6 (citing Am. Compl., ¶ 10, ECF No. 24).  State Defendants also note that Plaintiff admits it was given a hearing and notice of the hearing prior to its removal from the towing list.  *Id.* (citing Am. Compl., ¶ 27, ECF No. 24).  According to State Defendants, Plaintiff made "no allegation that these procedures were inadequate," and therefore, "Plaintiff cannot maintain a procedural due process claim under the Fourteenth Amendment."  *Id.*   But Plaintiff argues "that the February 7, 2017 hearing was not meaningful in any sense of the word."  Pl.'s Resp. to State Defs., at 11.  And in support of this argument, Plaintiff points to a number of allegations made in the Amended Complaint:   Mansfield ignored relevant facts and failed to obtain relevant information before deciding to remove Plaintiff from the towing list; Mansfield relied entirely on Bratton's report, which Plaintiff further alleges was "unreasonable, incompetent, and base[d]

upon inadequate information"; Plaintiff was not entitled to discover any facts or information regarding the allegations prior to February 7, 2017; no person associated with TNJ was present for Plaintiff to examine or cross-examine at the February 7, 2017 hearing; Mansfield further failed to consider or ignored relevant evidence that was presented by Plaintiff at the February 7, 2017 hearing. *Id.* (citing Am. Compl., ¶¶ 25–26, 28–29, ECF No. 24). Some of these statements do not constitute factual assertions but mere naked accusations or legal conclusions. For example, Plaintiff does not make any allegation that would tend to show that Bratton was unreasonable or incompetent. Nor does Plaintiff explain what information Bratton knew to be false. Under Rule 12(b), such assertions are not presumed to be true by the Court. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) (citations omitted). But for the allegations as to procedural deficiencies, the question presented is whether Plaintiff's allegations describe a procedure that is indeed inadequate.

In determining whether procedural protections are adequate, the Court balances the private interest at stake, the State's interest in the deprivation, and the public interest. *See Mathews v. Eldridge*, 424 U.S. 319, 339–40, 347 (1976). In doing so, the Court must also consider "the fairness and reliability of the existing . . . procedures, [as well as] the probable value, if any, of additional procedural safeguards." *Id.* at 343. "The fundamental requisite of due process of law is the opportunity to be heard. The[refore, a] hearing must be at a meaningful time and in a meaningful manner." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965); *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)) (internal quotation marks omitted). "The opportunity to be heard must be tailored to the capacities and circumstances of those who are to be heard." *Id.* at 268–69.

The Court first weighs the private interest at stake in this case: Plaintiff's presence on the State's towing list. Plaintiff alleges that a significant portion of its economic activity relies on its presence on the towing list. To a degree, this interest is comparable to one's interest in remaining employed. *See generally Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985) ("[T]he significance of the private interest in retaining employment cannot be gainsaid."). Generally speaking, "depriving a person of the means of livelihood is severe." *Christensen v. Kingston Sch. Comm.*, 360 F. Supp. 2d 212, 216 (D. Mass. 2005) (quoting *Loudermill*, 470 U.S. at 543–44) (internal quotation marks omitted). But Plaintiff does not allege that it is a government towing service or wholly reliant upon the State and City for its income. Thus, Plaintiff's interest might appear more akin to a demotion rather than a termination. *See, e.g.*, *Alameda Cty. Mgmt. Emps. Assn. v. Superior Court*, 125 Cal. Rptr. 3d 556, 576 (Cal. Ct. App. 2011) (stating that the private interest in retaining employment is reduced for a demotion as against termination because the employee is not forced to find work elsewhere). But certainly Plaintiff would need to find more work to replace the lost revenue, and opportunities afforded Plaintiff by the State do not appear to be so easy to replace. Yet the economic loss of a business is not given great weight by the courts. *See, e.g.*, *Central Freight Lines, Inc. v. United States*, 669 F.2d 1063, 1068 (Former 5th Cir. 1982) (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Arnett v. Kennedy*, 416 U.S. 134 (1974); *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886 (1961)) ("While this threatened loss is undoubtedly important to appellants, the hardship does not compare with the personal economic losses imposed . . . in other cases."); *Riblet Tramway Co. v. Stickney*, 523 A.2d 107, 112–13 (N.H. 1987) (citing *Loudermill*, 470 U.S. at 543; *Goldberg v. Kelly*, 397 U.S. 254, 264  (1970)) ("The private interest at stake here is [the] property interest in the completion of a construction contract. Although this interest is not

insubstantial, it is far less weighty than those involved when, for example, a welfare recipient is denied his benefits or an individual's employment is terminated.").  And when considering the loss of a medical license in *Nguyen v. Dep't of Health*, the Court of Appeals of Washington considered the economic loss to the appellant but largely focused on the stigma and damage to his reputation.  994 P.2d 216, 220 (Wash. Ct. App. 1999), *rev'd on other grounds* 29 P.3d 689 (Wash. 2001).  Arguably, Plaintiff has dealt with stigma by being removed from the City's list as a direct result of its removal from the State list, but Plaintiff has made no such allegation.  The Court must conclude that while Plaintiff's private interest is "not insubstantial," it does not rise to the compelling, or even significant, interests of other cases.

Second, the Court considers the State's interest in this matter.  But State Defendants do not raise what the State's interest might be.  It is not difficult, however, for the Court to imagine something along the lines of an interest in ensuring the fair treatment of its citizens by those that the State arranges to clean-up accidents on its roads and highways.  This of course aligns with the next consideration:  the public interest.  The public's and the State's interest in ensuring fair treatment by the towing companies is likewise not insubstantial, but the Court is not aware of any source of law suggesting that it might be so compelling as to obviously and drastically outweigh Plaintiff's interest in the economic activity that comes from being on the State's towing list.

Finally, the Court must consider the reliability of the current procedures and burden of requiring the procedures that Plaintiff argues it is due under the law.  The Court finds itself unable to adequately do so given only Plaintiff's allegations and State Defendants' Motion.  Combining this fact with State Defendants' failure to adequately argue the State and Public interests in their Memorandum and mindful that the burden is on State Defendants at this stage of

the proceedings, the Court is unable to unequivocally find that Plaintiff has no claim.  The Court must therefore find that Plaintiff made sufficient allegations to support its procedural due process claims.  Therefore, such claims survive this Motion to Dismiss.

### G.    Contract Clause Claims

And finally, State Defendants argue that Plaintiff fails to allege facts sufficient to support a claim against them under the Contract Clause.  Plaintiff objects to the characterization of its claims as being brought under the Contract Clause rather than the Fourteenth Amendment.  Plaintiff only asserts that its rights to legitimately conduct a business and to contract are protected by the Fourteenth Amendment's guarantee of Due Process and were violated by the actions of Defendants.  Pl.'s Resp. to State Defs.' Mot., at 11–12.  Thus, there is no contracts clause claim, and Plaintiff has brought no cause of action regarding these rights beyond its Fourteenth Amendment Due Process Clause claim.  To the extent that the causes of action raised in paragraph 31(f)–(g) are distinct from Plaintiff's claims under the Fourteenth Amendment's Due Process Clause, such claims are hereby **DISMISSED**.

## IV.    CONCLUSION

For the foregoing reasons, City Defendants' Motion to Dismiss and State Defendants' first Motion to Dismiss are **DENIED** as moot, and State Defendants' second Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.  All of Plaintiff's claims against State Defendants are **DISMISSED** except for its procedural due process claims under the Fourteenth Amendment, substantive due process claims under the Fourteenth Amendment, and "arbitrary and capricious" claims brought more generally under the United States Constitution.  As stated

above, should City Defendants wish to file a new motion to dismiss, they have fourteen (14) days from the entry of this Order to do so.

**IT IS SO ORDERED**.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE


Date:  February 1, 2018.